FILED

July 03, 2012

CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0004322848

**54**

Zack A. Clement *(pro hac vice* pending)
William R. Greendyke *(pro hac vice* pending)
R. Andrew Black  *(pro hac vice* pending)
**FULBRIGHT & JAWORSKI L.L.P.**
1301 McKinney, Suite 5100
Houston, TX  77010-3095
Telephone:     (713) 651-5151
Facsimile:      (713) 651-5246
zclement@fulbright.com
wgreendyke@fulbright.com
ablack@fulbright.com

Kenneth N. Klee (SBN 63372)
Michael L. Tuchin (SBN 150375)
**KLEE, TUCHIN, BOGDANOFF & STERN LLP**
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA  90067-6049
Telephone:     (310) 407-4000
Facsimile:      (310) 407-9090
kklee@ktbslaw.com
mtuchin@ktbslaw.com

Attorneys for Debtor
TOWN OF MAMMOTH LAKES, CALIFORNIA

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| IN RE, | Case No. 2012-32463 |
| TOWN OF MAMMOTH LAKES, CALIFORNIA, | DC No. FJ-3 |
| DEBTOR. | Chapter 9 |
| | **PLAN FOR THE ADJUSTMENT OF DEBTS OF TOWN OF MAMMOTH LAKES, CALIFORNIA, JULY 3, 2012** |
| | Date:   TBA<br>Time:   TBA<br>Place:  Robert Matsui U.S. Courthouse<br>        Dept. __, Courtroom __<br>        501 I Street, Sacramento, CA 95814 |

52147043.2

# TABLE OF CONTENTS

Page

I.   DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION ................. 1
     A.   Definitions. .......................................................................................... 1
     B.   Rules of Construction. ......................................................................... 12

II.  TREATMENT AND DEADLINE FOR THE ASSERTION OF
     ADMINISTRATIVE CLAIMS AND PROFESSIONAL CLAIMS ......................... 13
     A.   Treatment of Administrative Claims other than Professional Claims. ................. 13
     B.   Treatment of Professional Claims. ........................................................ 13
     C.   Priority Claims In Chapter 9. ............................................................... 13
     D.   Deadline for the Filing and Assertion of Administrative Claims (Other
          Than Ordinary Course Administrative Claims). ........................................ 14

III. DESIGNATION OF CLASSES OF CLAIMS ............................................... 14

IV.  TREATMENT OF CLAIMS ...................................................................... 15
     A.   Class 1 - Union Bank COP Obligations. ................................................ 15
     B.   Class 2 - Citizens Bank (Police Facility) COP Obligations. ....................... 15
     C.   Class 3 - Citizens Bank (Mammoth Lakes Housing Corporation Land
          Acquisition Project) COP Obligations. .................................................. 16
     D.   Class 4 – Employee Pre-Petition Leave Claims. ...................................... 17
     E.   Class 5 – Convenience Class Claims ..................................................... 18
     F.   Class 6 – General Unsecured Claims Not Otherwise Classified. ................. 18
     G.   Class 7 – Claims of CJPIA for General Liability Coverage Obligations. ...... 19
     H.   Class 8 - Claims of CJPIA for Workers' Compensation Insurance ............. 20
     I.   Class 9 - Claims of CalPERS with Respect to the CalPERS Pension Plan,
          as Trustee Under the CalPERS Pension Plan for the Benefit of CalPERS
          Pension Plan Participants. .................................................................. 21
     J.   Class 10 - Special Assessment and Special Tax Obligations. ..................... 21

V.   ACCEPTANCE OR REJECTION, VOTING OF CLAIMS AND CRAM DOWN. ....... 22

VI.  TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ......... 22
     A.   Assumption of Executory Contracts and Unexpired Leases. ..................... 22
     B.   Cure Payments. ............................................................................... 23
     C.   Assumption and Cure Objection Procedure. ........................................... 23
     D.   Rejection of Executory Contracts and Unexpired Leases. ......................... 24
     E.   Preexisting Obligations to the Town Under Rejected Executory Contracts
          and Unexpired Leases. ...................................................................... 24
     F.   Claims Based on Rejection of Executory Contracts and Unexpired Leases. ...... 24

DOCUMENT PREPARED
ON RECYCLED PAPER

| VII.  | IMPLEMENTATION AND MEANS FOR IMPLEMENTATION OF THIS PLAN | 25 |
|-------|---------------------------------------------------------|----|
| VIII. | MAMMOTH LAKES PLAN OF ADJUSTMENT TRUST AND PLAN TRUSTEE | 26 |
|       | A.   Generally | 26 |
|       | B.   Establishment Of The Trust | 27 |
|       | C.   Purpose Of The Trust | 27 |
|       | D.   Appointment Of The Plan Trustee | 27 |
|       | E.   Powers Of The Plan Trustee | 28 |
|       | F.   Payment Of Expenses Incurred By The Trust | 31 |
|       | G.   Exculpation And Indemnification Of The Plan Trustee | 31 |
|       | H.   Retention Of Funds Prior To Distribution | 32 |
|       | I.   Distributions To Trust Beneficiaries | 32 |
|       | J.   Representation Of Trust | 33 |
|       | K.   Termination Of The Trust | 33 |
|       | L.   Resignation Of The Plan Trustee | 34 |
| IX.   | DISTRIBUTIONS | 34 |
|       | A.   Distribution Agents. | 34 |
|       | B.   Delivery of Distributions | 34 |
|       | C.   Undeliverable Distributions. | 35 |
|       | D.   Distributions of Cash. | 36 |
|       | E.   Timeliness of Payments. | 36 |
|       | F.   Compliance With Tax, Withholding and Reporting Requirements. | 36 |
|       | G.   Time Bar to Cash Payments. | 37 |
|       | H.   No *De Minimis* Distributions. | 37 |
|       | I.   No Distributions on Account of Disputed Claims. | 37 |
|       | J.   No Postpetition Accrual. | 38 |
| X.    | DISPUTED CLAIMS; OBJECTIONS TO CLAIMS; PROSECUTION OF OBJECTIONS TO DISPUTED CLAIMS | 38 |
|       | A.   Claims Objection Deadline; Prosecution of Objections. | 38 |
|       | B.   Reserves, Payments, and Distributions With Respect to Disputed Claims. | 38 |
| XI.   | EFFECT OF CONFIRMATION | 39 |
|       | A.   Exculpation. | 39 |
|       | B.   Binding Effect. | 40 |
|       | C.   Discharge of the Town. | 40 |

DOCUMENT PREPARED
ON RECYCLED PAPER

| | D. | Injunction. | 41 |
|---|---|---|---|
| | E. | Term of Existing Injunctions or Stays. | 41 |
| XII. | | RETENTION OF AND CONSENT TO JURISDICTION | 42 |
| XIII. | | CONDITIONS PRECEDENT | 44 |
| | A. | Conditions Precedent to Effective Date. | 44 |
| | B. | Waiver of Conditions to Effective Date. | 44 |
| | C. | Effect of Failure of Conditions. | 44 |
| XIV. | | MISCELLANEOUS PROVISIONS | 45 |
| | A. | Severability. | 45 |
| | B. | Governing Law. | 45 |
| | C. | Effectuating Documents and Further Transactions. | 46 |
| | D. | Plan Supplement | 46 |
| | E. | Modification of the Plan | 46 |
| | F. | Notices. | 46 |
| | G. | Notice of Effective Date. | 47 |
| XV. | | EXHIBITS TO PLAN FOR THE ADJUSTMENT OF DEBTS  OF TOWN OF MAMMOTH LAKES, CALIFORNIA | 49 |

NOTE:  The Bankruptcy Court Has Not Yet Approved The Disclosure Statement Pursuant To Section 1125(b) Of The Bankruptcy Code For Use In The Solicitation Of The Plan Of Adjustment Of Debts.  The Filing And Distribution Of This Plan Therefore Is Not Intended As, And Should Not Be Construed To Be, A Solicitation Of Acceptance Or Rejection Of This Plan.

52147043.2

DOCUMENT PREPARED ON RECYCLED PAPER

1    The Town of Mammoth Lakes, California (the "Town"), a debtor under chapter 9

2    of the United States Bankruptcy Code, hereby proposes the following Plan of Adjustment of

3    Debts (this "Plan"), pursuant to section 941 of the Bankruptcy Code.[1]

4    Please refer to the accompanying Disclosure Statement for a discussion of the

5    Town's financial condition, the developments throughout the Chapter 9 Case, a summary and

6    analysis of this Plan and other important information. The Town encourages you to read this Plan

7    and the Disclosure Statement in their entirety before voting to accept or reject this Plan. No

8    materials other than the Disclosure Statement and the various Exhibits and Schedules attached to

9    or incorporated therein have been approved for use in soliciting acceptance or rejections of this

10   Plan.

11   **I.    DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION**

12        **A.    Definitions.**

13        **1.    Administrative Claim** means any Claim for an administrative expense of

14   the kind described in sections 503 (b) or 507(a)(2) of the Bankruptcy Code.

15        **2.    Allowed** means a Claim that:

16        (a)    Is asserted in a proof of claim filed in compliance with section 501

17   of the Bankruptcy Code and any applicable orders of the Bankruptcy Court and as to which: (i) no

18   objection has been filed within the deadline established pursuant to Section X.A. of the Plan; (ii)

19   the Bankruptcy Court has entered a Final Order allowing all or a portion of such Claim (but only

20   in the amount so allowed); or (iii) the Bankruptcy Court has entered a Final Order under section

21   502(c) of the Bankruptcy Code estimating the amount of the Claim for purposes of allowance (but

22   only in the amount so estimated);

23        (b)    Is subject to a stipulation between the Town or the Trust as

24   applicable and the holder of such Claim providing for the allowance of such Claim;

25

26   [1]    The definitions of capitalized terms used throughout this Plan are set forth in Section I. A.

DOCUMENT PREPARED
ON RECYCLED PAPER

52147043.2                                          - 1 -

(c)    Is deemed "allowed" pursuant to this Plan;

(d)    Is designated as "allowed" in a pleading entitled "Designation of Allowed Claims" (or a similar title of the same import) filed with the Bankruptcy Court by the Town prior to the Effective Date or by the Trust (with respect to Class 6 Claims) or the Town (with respect to all other Claims) after the Effective Date; or

(e)    Is an Administrative Claim as to which the Bankruptcy Court has entered a Final Order allowing all or a portion of such claim (but only in the amount so allowed).

**3.    Amended Citizens Bank COP Obligations Documents** means the documents to be executed on the Effective Date amending and restating the terms of the documents evidencing the (a) Citizens Bank (Police Facility) COP Obligations and the (b) Citizens Bank (Mammoth Lakes Housing Corporation Land Acquisition Project) COP Obligations, by extending the existing term of both obligations by three years and modifying the Town's payment obligation as set forth, respectively, on Exhibits C and D to the Plan and honoring the Town's existing obligations to Citizens Bank in the underlying documents.

**4.    Annual Cash Contribution** means Cash in the amounts set forth on Exhibit B that the Town will contribute to the Trust annually for a period of ten years after the Confirmation Date beginning May 31, 2013 and continuing on May 31 of the following years: (a) until a total of ten payments have been made to the Trust, or (b) to fund the issuance of a Plan COP/Bond, obtained at the Town's sole election and discretion after the Effective Date, the net proceeds of which will be contributed to the Trust, to fund payments to holders of Allowed Class 6 Claims pursuant to the terms of the Plan.

**5.    Assumption and Cure Objection Procedure** means the procedure described in Section VI.C of the Plan.

**6.    Available Cash** means Cash held by the Plan Trustee in the Class 6 Claims Fund, other than Cash set aside in Disputed Claims Reserves and the Expense Reserve, in an

amount sufficient, in the determination of the Plan Trustee, to distribute to beneficiaries of the Trust.

7. **Ballot** means the ballot(s), in the form(s) approved by the Bankruptcy Court in the Plan Solicitation Order, accompanying the Disclosure Statement and provided to each holder of a Claim entitled to vote to accept or reject this Plan.

8. **Bankruptcy Code** means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 9 Case.

9. **Bankruptcy Court** means the United States Bankruptcy Court for the Eastern District of California, Sacramento Division, or such other court that lawfully exercises jurisdiction over the Chapter 9 Case.

10. **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 9 Case, together with the local rules of the Bankruptcy Court applicable to the Chapter 9 Case. Unless otherwise indicated, references in this Plan to "Bankruptcy Rule" are to the specifically identified rule of the Federal Rules of Bankruptcy Procedure.

11. **Business Day** means any Monday through Friday, inclusive, other than a day designated as an official federal or state holiday.

12. **CalPERS** means the California Public Employees' Retirement System.

13. **CalPERS Pension Plans** means, collectively, the following pension plan contracts between CalPERS and the Town: (1) Safety Plan of the Town of Mammoth Lakes (Employer # 1380); and (2) Miscellaneous Plan of the Town of Mammoth Lakes (Employer # 1380).

14. **CalPERS Pension Plan Participants** means those current and former Town employees and their survivors and other dependants who are the beneficiaries of one or both of the CalPERS Pension Plans.

15. **Cash** means cash and cash equivalents.

DOCUMENT PREPARED ON RECYCLED PAPER

**16.**    **Chapter 9 Case** means the case under chapter 9 of the Bankruptcy Code commenced by the Town, styled as *In re Town of Mammoth Lakes, California,* Case No. 2012-_____, currently pending in the Bankruptcy Court.

**17.**    **Citizens Bank** means Citizens Business Bank.

**18.**    **Citizens Bank (Mammoth Lakes Housing Corporation Land Acquisition Project) COP Obligations** means the payment obligations of the Town to Citizens Bank for payments representing principal and interest and fees and expenses of Citizens Bank as initially approved by the Town Council in its Resolution No 04-03 dated January 7, 2004 providing for the financing of the acquisition of real property for use as community housing through the execution of underlying financing documents all dated as of January 8, 2004.  The currently outstanding principal component of the Citizens Bank (Mammoth Lakes Housing Corporation Land Acquisition Project) COP Obligation is $201,445.65 as of July 1, 2012.

**19.**    **Citizens Bank (Police Facility) COP Obligations** means the payment obligations of the Town to Citizens Bank for payments representing principal and interest and fees and expenses of Citizens Bank as initially approved by the Town Council in its Resolution No 04-02 dated January 7, 2004 providing for the financing of the acquisition of real property for use as a future police facility through the execution of underlying financing documents all dated as of January 7, 2004.  The currently outstanding principal component of the Citizens Bank (Police Facility) COP Obligation is $317,762.69 as of July 1, 2012.

**20.**    **CJPIA** means the California Joint Powers Insurance Authority, the joint insurance pool in which the Town is a member and through which the Town obtains its general liability, workers' compensation and real property insurance coverage.

**21.**    **Claim** means a claim against the Town or the property of the Town within the meaning of section 101(5) of the Bankruptcy Code.

**22.**    **Class** means one of the classes of Claims established under Section III pursuant to section 1122 of the Bankruptcy Code.

23.    **Class 6 Claim** means any general unsecured Claim that is not otherwise classified under the Plan.

24.    **Class 6 Claims Fund** means the pool of funds held by the Trust and administered by the Plan Trustee to be used for payment to Holders of Allowed Class 6 Claims consisting of: (1) the net proceeds from the sale of the Contributed Real Estate by the Trust (2) the Initial Cash Contribution, and (3) either the Annual Cash Contribution or the proceeds of the Plan COP/Bond, as applicable.

25.    **Confirmation Date** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

26.    **Confirmation Hearing** means the hearing held by the Bankruptcy Court pursuant to sections 943 and 1128 of the Bankruptcy Code to consider confirmation of this Plan as such hearing may be adjourned or continued from time to time.

27.    **Confirmation Order** means the order of the Bankruptcy Court confirming this Plan pursuant to section 943 and the applicable provisions of section 1129 of the Bankruptcy Code.

28.    **Contributed Real Estate** means the parcel(s) of real estate owned by the Town (designated in the Plan Supplement) to be contributed to the Trust on the Effective Date.

29.    **Convenience Class Claim** means any general unsecured Claim that is not an Administrative Claim, or a Claim in Classes 1 to 4 or Classes 7 to 10 and that is (a) equal to or less than $10,000 or (b) voluntarily reduced by the holder to $10,000.

30.    **COPs** means certificates of participation.

31.    **Corporation** means, as the context requires, the Mammoth Lakes Municipal Service Corporation or the Municipal Finance Corporation.

32.    **Disallowed** means a Claim or portion thereof that has been disallowed by an order of the Bankruptcy Court.

33. **Disclosure Statement** means the disclosure statement, and all exhibits and schedules incorporated therein, that relates to this Plan and that is approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, as the same may be amended, modified or supplemented in accordance with the Bankruptcy Code.

34. **Disputed Claim** means any Claim or portion thereof that has not become Allowed and that is not Disallowed. In the event that any part of a Claim is Disputed, except as otherwise provided in this Plan, such Claim shall be deemed Disputed in its entirety for purposes of distribution under this Plan unless the Town or Trust, as applicable, otherwise agrees in writing in its sole discretion. Without limiting the foregoing, a Claim that is the subject of a pending application, motion, complaint, objection, or any other legal proceeding seeking to disallow, limit, reduce, subordinate, or estimate such Claim shall be deemed to be Disputed.

35. **Disputed Claim Reserve** means property set aside by the Plan Trustee with respect to Disputed Claims from property to be distributed under the Plan until the entry of a Final Order on the allowance or disallowance of the applicable Disputed Claims.

36. **Effective Date** means the first business day after the date on which the conditions specified in Section XIII have been satisfied or waived.

37. **Employee Leave Fund** means the Town's fund used to account and reserve funds necessary for the payment of Employee's accrued but unpaid comprehensive, sick and other paid leave.

38. **Employee Pre-Petition Leave Claims** means the Claims of Town employees on account of  comprehensive and sick leave accrued and earned by Town employees but unpaid as of July 1, 2012.

39. **Employee Pre-Petition Leave Bank** means the total number of hours of comprehensive and sick leave accrued and earned by each Town employee but unpaid as of July 1, 2012.

**40.**    **Expense Reserve** means Cash retained in the Trust by the Plan Trustee in an amount sufficient to cover anticipated costs of administration of the Trust.

**41.**    **Final Order** means a judgment, order, ruling, or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal having jurisdiction over the subject matter thereof which judgment, order, ruling, or other decree has not been reversed, stayed, modified, or amended and as to which: (a) the time to appeal or petition for review, rehearing or certiorari has expired and no appeal or petition for review, rehearing or certiorari is then pending; or (b) any appeal or petition for review, rehearing or certiorari has been finally decided and no further appeal or petition for review, rehearing or certiorari has been or can be taken or granted.

**42.**    **GEA** means the Mammoth Lakes General Employees Association.

**43.**    **General Fund** means the Town's chief operating fund, which is used to account for all financial resources except those required to be accounted for, by law or government accounting rules, in another fund (such as the Restricted Funds).

**44.**    **General Liability Claim** means a tort or contract Claim filed against the Town by a claimant pursuant to the Government Claims Act, California Government Code section 810 *et seq.*, which claim is covered under the pooling agreement with the CJPIA.  All tort or contract Claims filed against the Town pursuant to the Government Claims Act, California Government Code section 810 *et seq.*, shall be treated under the Plan as a Class 6 Claims (or a Convenience Class Claims as applicable).

**45.**    **General Liability Coverage Obligations** means the obligations owed by the Town to the CJPIA for general liability coverage to pay: (a) the Town's required annual contribution; (b) the Town's annual flat rate "payment plan" amount covering the CJPIA transition to prospective funding for prior coverage periods through fiscal year 2010-2011; and (c) the Town's retroactive adjustment payments for prior coverage periods through 2012-2013.

52147043.2

**46.**    **Impaired** means a Claim or Interest that is in an impaired class within the meaning of section 1124 of the Bankruptcy Code.

**47.**    **Initial Cash Contribution** means the approximately $1.6 million in Cash contributed by the Town to the Trust on the Effective Date.

**48.**    **Long-Term Financial Forecast and Business Plan** means the financial planning document prepared by FTI Capital Advisors and adopted by the Town Council by resolution dated June 20, 2012, that presents strategies to maintain a balanced operating budget, address the Town's debts, rebuild fiscal stability, and enable the Town to continue to provide municipal services to its residents and covers the Town's five fiscal years commencing on July 1, 2012 and ending on June 30, 2017.

**49.**    **MEA** means the Mammoth Lakes Management Employee Association.

**50.**    **Notice of Effective Date** shall have the meaning ascribed to such phrase in Section XIV(G) of the Plan.

**51.**    **Notice of Entry** means the notice of the entry of the Confirmation Order mandated by Bankruptcy Rule 2002(f)(7).

**52.**    **Ordinary Course Administrative Claim** means an Administrative Claim, other than a Professional Claim, that represents an obligation incurred in the ordinary course of business of the Town after the Petition Date (as determined by the Town in its sole discretion).

**53.**    **Payment Dates** shall mean Business Days on which payments of Allowed Class 6 Claims by the Trust from the Class 6 Claims Fund will be made by the Plan Trustee as described in more detail in the Trust Agreement.

**54.**    **Person** means any person or organization created or recognized by law, including any association, company, cooperative, corporation, entity, estate, individual, joint stock company, joint venture, limited liability company, partnership, trust, unincorporated organization, or government or any political subdivision thereof.

**55.**    **Petition Date** means July 3, 2012.

56. **Plan** means this Plan of Adjustment of Debts, together with any Exhibits, each in their present form or as they may be altered, amended or modified from time to time in accordance with the provisions of this Plan, the Confirmation Order, the Bankruptcy Code, and the Bankruptcy Rules.

57. **Plan COP/Bond** means a new COP or bond issued pursuant to the Plan at the Town's sole election and discretion, supported by the Annual Cash Contribution.  The net cash proceeds of any such Plan COP/Bond shall be transferred by the Town to the Trust and held by the Plan Trustee in the Class 6 Claims Fund for pro rata distribution to holders of Allowed Class 6 Claims.

58. **Plan Solicitation Order** means the Order Approving (1) Disclosure Statement With Respect To The Town's Plan Of Adjustment; (2) Form, Scope And Nature of Solicitation, Balloting, Tabulation And Notices With Respect Thereto; And (3) Related Confirmation Procedures, Deadlines And Notices, by which the Bankruptcy Court on _____, 2012 approved the Disclosure Statement as containing adequate information for the purpose of dissemination and solicitation of votes on and confirmation of this Plan and established certain rules, deadlines, and procedures for the solicitation of votes with respect to and the balloting on this Plan.

59. **Plan Supplement** means the supplement(s) to the Plan filed in connection with the Plan prior to the Confirmation Hearing.

60. **Plan Trustee** means the trustee of the Trust appointed on the Effective Date pursuant to the Plan.

61. **POA** means the Mammoth Lakes Police Officers Association.

62. **Professional Claim** means a Claim required to be filed pursuant to Section II of the Plan with respect to amounts to be paid to a professional person that has been duly retained by the Town for services or expenses in the Chapter 9 Case or incident to this Plan. For the avoidance of doubt, no Professional Claim will be Allowed or paid by the Town if the

underlying professional's retention was by or on behalf of any person other than the Town or was otherwise not properly authorized by the Town.

63.    **PWEA** means the Mammoth Lakes Public Works Employees Association.

64.    **Related Parties** means, with respect to a Person, such Person's accountants, affiliates, agents, assigns, attorneys, bankers, consultants, directors, elected officials, employees, executors, financial advisors, heirs, managers, members, officers, parent entities, partners, principals, professional persons, representatives, shareholders, subsidiaries, and successors, whether past or present.

65.    **Restricted Funds** means the special purpose and enterprise funds administered by the Town, the use of which is restricted by, among other things, grants, federal law, the California Constitution or other California law, including local voter approved restrictions, such that the assets of the Restricted Funds may not lawfully be used to pay obligations of the General Fund.

66.    **Rights of Action** means any rights, claims, or causes of action owned by, accruing to, or assigned to the Town, including pursuant to the Bankruptcy Code or pursuant to any contract, statute, or legal theory, and further including, without limitation, any rights to, claims, or causes of action for recovery under any policies of insurance issued to or on behalf of the Town listed on Exhibit F.

67.    **Secured Claim** means a Claim that is secured, in whole or in part, (a) by a lien that is not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law; or (b) as a result of rights of setoff under section 553 of the Bankruptcy Code; but in any event only to the extent of the value, determined in accordance with section 506(a) of the Bankruptcy Code, of the holder's interest in the Town's interest in property or to the extent of the amount subject to such setoff, as the case may be.

68.    **Special Assessment and Special Tax Obligations** means, collectively:

(a)    Community Facilities District Bond (secured with a special tax) CFD No. 2001-1 2003 Special Tax Bonds (North Village Area) of which $8,150,000 remains outstanding; and

(b)    Assessment District Bond (secured with a special assessment)  AD No. 1993-4R (The Bluffs Subdivision) of which $1,966,491 remains outstanding.

69.    **Town** means the Town of Mammoth Lakes, California, the debtor in the Chapter 9 Case.

70.    **Town Council** means the duly elected legislative body of the Town.

71.    **Trust** means the Mammoth Lakes Plan of Adjustment Trust created pursuant to the Plan, described in Section VIII, for the benefit of holders of Allowed Class 6 Claims.

72.    **Trust Agreement** means the Mammoth Lakes Plan of Adjustment Trust Agreement to be executed on the Effective Date creating the Trust.

73.    **Trust Assets** means (a) the Contributed Real Estate, (b) the Initial Cash Contribution, and (c) the Annual Cash Contribution periodically transferred to the Trust after the Effective Date pursuant to the Plan and/or the net proceeds of a newly issued COP or bond supported by the Annual Cash Contribution.

74.    **Unclaimed Property** shall have the meaning ascribed to such phrase in Section IX.C.

75.    **Unimpaired** means a Claim that is not in an impaired class within the meaning of section 1124 of the Bankruptcy Code.

76.    **Union Bank** means Union Bank, N.A., formerly known as Union Bank of California, N.A..

77.    **Union Bank COP Obligations** means the payment obligations of the Town to holders of Certificates of Participation issued June 1, 2000, and Union Bank, the trustee for the Holders, for payments representing principal and interest and fees and expenses of Union

1   Bank as initially approved by the Town Council in its Resolution No 00-25 dated May 3, 2000

2   authorizing and directing the preparation of certain underlying financing documents all dated as

3   of June 1, 2000.   The currently outstanding principal component of the Union Bank COP

4   Obligation is $1,720,000 as of July 1, 2012.

5          **78.**     **Union Member** means a member of the GEA, MEA, POA or the PWEA.

6          **79.**     **Workers Compensation Claim** means those Claims pursuant to

7   California workers compensation law (California Labor Code section 3200 et seq.) of current and

8   former Town employees who have suffered an eligible injury while employed by the Town.

9          **80.**     **Workers Compensation Coverage Obligations** means the obligations

10  owed by the Town to the CJPIA for Workers' Compensation coverage to pay: (a) the Town's

11  required annual contribution; (b) the Town's annual flat rate "payment plan" amount covering the

12  CJPIA transition to prospective funding for prior coverage periods through fiscal year 2010-2011;

13  and (c) the Town's retroactive adjustment payments for prior coverage periods through 2012-

14  2013.

15         **B.**     **Rules of Construction.**

16                 The following rules of construction apply to this Plan: (a) unless otherwise

17  specified, all references in this Plan to "Sections" and "Exhibits" are to the respective Sections in

18  or Exhibits to this Plan, as the same may be amended or modified from time to time; (b) the

19  headings in this Plan are for convenience of reference only and do no limit or otherwise affect the

20  provisions of this Plan; (c) words denoting the singular number include the plural number and

21  vice versa; (d) the rules of construction set forth in section 102 of the Bankruptcy Code apply; (e)

22  in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy

23  Rule 9006(a) apply; and (f) the words "herein," "hereof," "hereto," "hereunder," and others of

24  similar import refer to this Plan as a whole and not to any particular section, subsection, or clause

25  contained in this Plan.

26

## II.    TREATMENT AND DEADLINE FOR THE ASSERTION OF ADMINISTRATIVE CLAIMS AND PROFESSIONAL CLAIMS

### A.    Treatment of Administrative Claims other than Professional Claims.

Except to the extent that the holder of an Allowed Administrative Claim (other than a Professional Claim) agrees to a different treatment, the Town or its agent shall pay to each holder of an Allowed Administrative Claim (other than Professional Claims), in full satisfaction, release and discharge of such Claim, Cash in an amount equal to such Allowed Administrative Claim on the later of (i) the Effective Date, (ii) the date on which such Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable.

### B.    Treatment of Professional Claims.

Pursuant to section 943(a)(3) of the Bankruptcy Code, all amounts to be paid for services or expenses in the Chapter 9 Case or incident to this Plan must be disclosed to the Bankruptcy Court and must be reasonable. There shall be paid to each holder of a Professional Claim, in full satisfaction, release and discharge of such Claim, Cash in an amount equal to that portion of such Claim that the Bankruptcy Court determines is reasonable, with credit being given to the Town to the extent of any prior payment on account of such Professional Claim, on or as soon as reasonably practicable following the date on which the Bankruptcy Court enters an Order determining such reasonableness. The Town, in the ordinary course of its business, and without the requirement for Bankruptcy Court approval, may pay for attorney services rendered and costs incurred following the Effective Date.

### C.    Priority Claims In Chapter 9.

The only kind of priority claims incorporated into chapter 9 through Section 901 are Administrative Claims allowed under section 507(a)(2) of the Bankruptcy Code. The treatment of all such Administrative Claims is set forth above in Sections II(A) and II(B). No other kinds of priority claims set forth in section 507 of the Bankruptcy Code are recognized in chapter 9 cases.

**D.** **Deadline for the Filing and Assertion of Administrative Claims (Other Than Ordinary Course Administrative Claims).**

All requests for payment (or any other means of preserving and obtaining payment) of Administrative Claims (other than Ordinary Course Administrative Claims) that have not been paid, released, or otherwise settled, including all requests for approval of Professional Claims, must be filed with the Bankruptcy Court and served upon the Town no later than thirty (30) days after the date on which the Notice of Effective Date is mailed. Any request for payment of an Administrative Claim , including any Professional Claim, that is not timely filed by such date will be forever barred, and holders of such Claims shall be barred from asserting such Claims in any manner against the Town.

## III. DESIGNATION OF CLASSES OF CLAIMS

Pursuant to section 1122 of the Bankruptcy Code, all Claims other than Administrative Claims are classified for all purposes, including voting, confirmation, and distribution pursuant to this Plan, as follows:

Class 1 – Union Bank COP Obligations.

Class 2 – Citizens Bank (Police Facility) COP Obligations.

Class 3 – Citizens Bank (Mammoth Lakes Housing Corporation Land Acquisition Project) COP Obligations.

Class 4 – Employee Pre-Petition Leave Claims.

Class 5 – Convenience Class Claims.

Class 6 – General Unsecured Claims Not Otherwise Classified.

Class 7 – Claims of CJPIA for General Liability Coverage Obligations.

Class 8 – Claims of CJPIA for Workers Compensation Coverage Obligations.

Class 9 – Claims of CalPERS with respect to the CalPERS Pension Plan, as trustee under the CalPERS Pension Plan for the benefit of CalPERS Pension Plan Participants

Class 10 – Special Assessment and Special Tax Obligations.

## IV.    TREATMENT OF CLAIMS

### A.    Class 1 - Union Bank COP Obligations.

#### 1.    Impairment and Voting.

Class 1 is not Impaired by this Plan because the treatment of this Class will not affect the legal, equitable or contractual rights of the holder of such Claims, and, accordingly, the holder of the Claims in this Class is not entitled to vote to accept or reject this Plan.

#### 2.    Treatment.

The Town will continue to honor its obligations under the Union Bank COP Obligations including the payment terms in the underlying documents.  The Town will make payments to holders of Class 1 Claims when and in the amount due, including unpaid fees, expenses, and charges due to Union Bank, as trustee, and the holders of the Certificates of Participation (2000 Land Acquisition Project) retain all of their rights and remedies under applicable nonbankruptcy law.

Payments of Class 1 Claims will be made from the General Fund.  Holders of Class 1 Claims will not receive beneficial interests in the Trust or participate in any distributions from the Class 6 Claims Fund.

### B.    Class 2 - Citizens Bank (Police Facility) COP Obligations.

#### 1.    Impairment and Voting.

Class 2 is Impaired by this Plan since the treatment of this Class will affect the legal, equitable or contractual rights of Citizens Bank, the holder of the Claims, and, accordingly, the holder of the Claims in this Class is entitled to vote to accept or reject this Plan in accordance with the Plan Solicitation Order.

#### 2.    Treatment.

The payment obligations of the Town to Citizens Bank will be extended by an additional three years at the existing interest rate resulting in the reduced annual payment

Document Prepared
on Recycled Paper

schedule set forth on Exhibit C.  On the Effective Date, the documents evidencing the Citizens Bank (Police Facility) COP Obligations will be modified and the Town and Citizens Bank will execute the Amended Citizens Bank (Police Facility) COP Obligations Documents amending and restating the Town's payment obligation, honoring the Town's existing obligations to Citizens Bank in the underlying documents and making conforming modifications to the underlying agreements.

Payments of Class 2 Claims will be made from the General Fund.  Holders of Class 2 Claims will not receive beneficial interests in the Trust or participate in any distributions from the Class 6 Claims Fund.

### C.    Class 3 - Citizens Bank (Mammoth Lakes Housing Corporation Land Acquisition Project) COP Obligations.

**1.    Impairment and Voting.**

Class 3 is Impaired by this Plan since the treatment of this Class will affect the legal, equitable or contractual rights of Citizens Bank, the holder of the Claims, and, accordingly, the holder of the Claims in this Class is entitled to vote to accept or reject this Plan in accordance with the Plan Solicitation Order.

**2.    Treatment.**

The payment obligations of the Town to Citizens Bank will be extended by an additional three years at the existing interest rate resulting in the reduced annual payment schedule set forth on Exhibit D.  On the Effective Date, the documents evidencing the Citizens Bank (Mammoth Lakes Housing Corporation Land Acquisition Project) COP Obligations will be modified and the Town and Citizens Bank will execute the Amended Citizens Bank (Mammoth Lakes Housing Corporation Land Acquisition Project) COP Obligations Documents amending and restating the Town's payment obligation, honoring the Town's existing obligations to Citizens Bank in the underlying documents and making conforming modifications to the underlying agreements.

Payments of Class 3 Claims will be made from the General Fund.  Holders of Class 3 Claims will not receive beneficial interests in the Trust or participate in any distributions from the Class 6 Claims Fund.

**D.**    **Class 4 – Employee Pre-Petition Leave Claims**

**1.**    **Impairment and Voting.**

Class 4 is Impaired by this Plan since the treatment of this Class will affect the legal, equitable or contractual rights of the holders of the Claims, and, accordingly, the holders of the Claims in this Class are entitled to vote to accept or reject this Plan in accordance with the Plan Solicitation Order.

**2.**    **Treatment.**

The number of hours in the Employee Pre-Petition Leave Bank for each Holder of a Class 4 Claim will be reduced by 10%.  During their continued employment with the Town, employees may use accrued and unpaid leave in their Employee Pre-Petition Leave Bank but will not be permitted to cash out any hours in their Employee Pre-Petition Leave Bank prior to the termination of employment.

Allowed Class 4 Claims, after the reduction set forth above, will be paid from the Employee Leave Fund as follows:

Upon the voluntary termination of employment of a Holder of an Allowed Class 4 Claim, hours in that employee's Employee Pre-Petition Leave Bank, shall be cashed out according to the following schedule:  (a) employees will receive a cash payment representing 50% of the total hours of his or her accrued and unpaid leave at the time of employment separation at the full rate of pay at the time of employment separation; and (b) the remaining 50% shall be paid out monthly over the following 12 months, at each employee's full rate of pay. Upon the involuntary termination of employment of a Holder of a Class 4 Claim, hours in that employee's Employee Pre-Petition Leave Bank shall be cashed out as follows: employees will

receive a cash payment representing 100% of their accrued and unpaid leave at the time of employment separation, at their full rate of pay.

Holders of Allowed Class 4 Claims will not receive beneficial interests in the Trust or participate in any distributions from the Class 6 Claims Fund.  Cash payments will be subject to all applicable payroll taxes and withholdings.

E.    **Class 5 – Convenience Class Claims**

1.    **Impairment and Voting.**

Class 5 is Impaired by this Plan since the treatment of this Class will affect the legal, equitable or contractual rights of the holders of the Claims, and, accordingly, the holders of the Claims in this Class are entitled to vote to accept or reject this Plan in accordance with the Plan Solicitation Order.

2.    **Treatment.**

Each holder of an Allowed Class 5 Claim will receive one cash payment from the General Fund on the later of the Effective Date of the Plan or the allowance of their Convenience Class Claim equal to 10% of the amount of their Allowed Convenience Class Claim.  Holders of Class 5 Claims will not receive beneficial interests in the Trust or participate in any distributions from the Class 6 Claims Fund.

F.    **Class 6 – General Unsecured Claims Not Otherwise Classified.**

1.    **Impairment and Voting.**

Class 6 is Impaired by this Plan since the treatment of this Class will affect the legal, equitable or contractual rights of the holders of the Claims, and, accordingly, the holders of the Claims in this Class are entitled to vote to accept or reject this Plan in accordance with the Plan Solicitation Order.

DOCUMENT PREPARED
ON RECYCLED PAPER

### 2.    Treatment.

Holders of Allowed Class 6 Claims will receive a beneficial interest in the Trust in proportion to the size of their Allowed Class 6 Claim as a percentage of the total of all Allowed Class 6 Claims.  As further described in Section VIII, the beneficiaries of the Trust will receive *pro rata* distributions from the Class 6 Claims Fund administered by the Plan Trustee.  The Town estimates that the total value of the assets contributed to the Class 6 Claims Fund will be approximately $6 million which the Town estimates will result in a payment of between approximately 5% to 12% of the Allowed amount of Class 6 Claims.  The distributions will be made by the Plan Trustee on the Payment Dates.

### G.    Class 7 – Claims of CJPIA for General Liability Coverage Obligations

### 1.    Impairment and Voting.

Class 7 is Impaired by this Plan since the treatment of this Class will affect the legal, equitable or contractual rights of the holder of the Claims, and, accordingly, the holder of the Claim in this Class is entitled to vote to accept or reject this Plan in accordance with the Plan Solicitation Order.

### 2.    Treatment.

To maintain its membership in the CJPIA pool for general liability coverage, the Town must pay its General Liability Coverage Obligations in full.  If it does not do so, the Town will lose its general liability coverage, exposing the Town to potentially much larger near-term claims.  The Town will pay its required annual contribution and retroactive adjustment payments for prior coverage periods through 2012-2013, when, and in the amounts due.

However, pursuant to the Plan, rather than paying the annual flat rate "payment plan" amount for prior coverage periods through fiscal year 2010-2011, required as part of the CJPIA's transition to prospective funding, over a period of six (6) years as designated in the CJPIA pooling agreement, the Town will instead make those payments over a period of 10 years.

Class 7 Claims will not receive beneficial interests in the Trust or participate in any distributions from the Class 6 Claims Fund.

### H.    Class 8 - Claims of CJPIA for Workers' Compensation Insurance

#### 1.    Impairment and Voting.

Class 8 is Impaired by this Plan since the treatment of this Class will affect the legal, equitable or contractual rights of the holder of the Claims, and, accordingly, the holder of the Claims in this Class is entitled to vote to accept or reject this Plan in accordance with the Plan Solicitation Order.

#### 2.    Treatment.

To maintain its membership in the CJPIA pool for workers' compensation coverage, the Town must pay its Workers' Compensation Coverage Obligations in full.  If it does not do so, the Town will lose its workers' compensation coverage, exposing the Town's current and former workers to grave risk and the Town to potentially much larger near-term claims.  The Town will pay its required annual contribution and retroactive adjustment payments for prior coverage periods through 2012-2013, when, and in the amounts, due.

However, pursuant to the Plan, rather than paying the annual flat rate "payment plan" amount for prior coverage periods through fiscal year 2010-2011, required as part of the CJPIA's transition to prospective funding, over a period of six (6) years as designated in the CJPIA pooling agreement, the Town will instead make those payments over a period of 10 years.

Class 8 Claims will not receive beneficial interests in the Trust or participate in any distributions from the Class 6 Claims Fund.

I.    **Class 9 – Claims of CalPERS with Respect to the CalPERS Pension Plan, as Trustee Under the CalPERS Pension Plan for the Benefit of CalPERS Pension Plan Participants.**

1.    **Impairment and Voting.**

Class 9 is not Impaired by this Plan because the treatment of this Class will not affect the legal, equitable or contractual rights of the holder of such Claims, and, accordingly, the holder of the Claims in this Class is not entitled to vote to accept or reject this Plan.

2.    **Treatment.**

The Town will continue to honor its obligations under the CalPERS Pension Plans, and CalPERS as trustee and the CalPERS Pension Plan Participants retain all of their rights and remedies under applicable nonbankruptcy law. Thus, CalPERS and the CalPERS Pension Plan Participants will be entitled to the same rights and benefits to which they are currently entitled under the CalPERS Pension Plans.

J.    **Class 10 – Special Assessment and Special Tax Obligations.**

1.    **Impairment and Voting.**

Class 10 is not Impaired by this Plan since the treatment of this Class will not affect the legal, equitable or contractual rights of the holders of the Claims, and, accordingly, the holders of Claims in this Class are not entitled to vote to accept or reject this Plan in accordance with the Plan Solicitation Order.

2.    **Treatment.**

Class 10 consists of Claims of the holders of bonds that are secured by special and restricted sources of revenues from certain Special Assessment and Special Tax Obligations levied on specific real property within the respected districts for which these obligations were issued. These special assessment and special tax revenues are legally restricted to the payment of debt service on the special assessment and special tax obligations, are "special revenues" as defined in section 902(2) of the Bankruptcy Code and cannot be used for any other purpose or be

transferred to the General Fund. The General Fund is not obligated to pay debt service on the special assessment and special tax obligations.  The Town will continue to apply revenues from the applicable special assessments and special taxes to pay the Special Assessment and Special Tax Obligations as required by the terms of such obligations.

## V.    ACCEPTANCE OR REJECTION, VOTING OF CLAIMS AND CRAM DOWN.

Each holder of an Allowed Claim classified into Classes 2, 3, 4, 5, 6, 7 and 8 shall be entitled to vote each such Claim to accept or reject this Plan.

With respect to any Impaired Class of Claims that fails to accept this Plan, the Town, as proponent of this Plan, intends to request that the Bankruptcy Court nonetheless confirm this Plan pursuant to the so-called "cram down" powers set forth in Bankruptcy Code section 1129(b) as incorporated by section 901.

## VI.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

On or before the Effective Date, and to the extent permitted by applicable law, all of the Town's executory contracts and unexpired leases will be rejected by the Town unless such executory contract or unexpired lease:  (a) is being assumed, or assumed as modified pursuant to the Plan or is identified on Exhibit A to the Plan; (b) is the subject of a motion to assume pursuant to section 365(a) of the Bankruptcy Code filed on or before the Confirmation Hearing; or (c) has been previously assumed, assumed and assigned, or rejected.

### A.    Assumption of Executory Contracts and Unexpired Leases.

On July 1, 2012, the Town began implementing changes to certain of its existing executory contracts, effectively breaching those contracts prior to the Petition Date.  As to those contracts listed on Exhibit A to this Plan, the Town's counterparties have agreed to waive those breaches in accordance with memoranda of understanding, conditioned on the Effective Date of the Plan, and those contracts will be assumed as modified pursuant to the Plan as of the Effective

Date.    Certain other contracts listed on Exhibit A to this Plan will be assumed without modification as of the Effective Date, subject to the Assumption Objection Procedure.

**B.**    **Cure Payments.**

The Town believes that other than as set forth on Exhibit A, it is not in default under any of its executory contracts and unexpired leases, with the exception of putative defaults under any agreement that contains a so-called *ipso facto* clause. Such clauses are unenforceable as against the Town pursuant to Bankruptcy Code section 365, even if the Town were otherwise in default under any such agreement(s).  The Town has listed on Exhibit A what it believes to be the payment owed, if any, to cure defaults under the executory contracts and unexpired leases listed on Exhibit A.

**C.**    **Assumption and Cure Objection Procedure.**

A creditor who is a party to an executory contract or unexpired lease with the Town whose executory contract or unexpired lease is listed on Exhibit A and who disputes the cure amount asserted by the Town thereon may object to the assumption of such agreement or assert that there are defaults other than those scheduled by the Town (a "Cure Objection") by filing in the Bankruptcy Court and serving on the Town an objection within 21 days of the service of the Notice of Entry by mail.   Service on the Town of any Cure Objection shall be accomplished by emailing the objection to zclement@fulbright.com  or by mailing it to the following address:

> Zack A. Clement
> Fulbright & Jaworski LLP
> 1301 McKinney, Suite 5100
> Houston, TX 77010-3095

In the event that any Cure Objections are filed and served, the Town will file a responsive pleading within 14 days of filing, and will schedule a hearing at which time the objections may be heard.  At the conclusion of the hearing on a Cure Objection, the Town may, in

DOCUMENT PREPARED
ON RECYCLED PAPER

its sole discretion, elect to reject any executory contract or unexpired lease if the Bankruptcy Court has determined that the payment owed to cure a default under an executory contract or unexpired lease that was listed on Exhibit A is greater than the Town has asserted in Exhibit A.

**D.    Rejection of Executory Contracts and Unexpired Leases.**

In addition to any executory contracts or unexpired leases that have been rejected by separate order during the Chapter 9 Case, and except as otherwise provided in this Plan, all of the Town's executory contracts and unexpired leases not listed on Exhibit A shall be deemed rejected as of the Effective Date.

**E.    Preexisting Obligations to the Town Under Rejected Executory Contracts and Unexpired Leases.**

Rejection of any executory contract or unexpired lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Town under such contracts or leases.  In particular, notwithstanding any non-bankruptcy law to the contrary, the Town expressly reserves and does not waive any right to receive, or any continuing obligation of a counterparty to provide warranties or continued maintenance obligations on goods or services previously purchased by the Town from counterparties to rejected or repudiated executory contracts or unexpired leases to the  extent so provided by applicable bankruptcy law. Additionally, the Town reserves the right to collect any amounts owed to the Town under such executory contracts or unexpired leases to the extent so provided by applicable bankruptcy law.

**F.    Claims Based on Rejection of Executory Contracts and Unexpired Leases**

Unless otherwise provided by an order of the Bankruptcy Court, any proofs of claim asserting Claims arising from the rejection of the Town's executory contracts and unexpired leases pursuant to the Plan, or otherwise, must be filed with the clerk of the Bankruptcy Court no later than thirty (30) days after the later of (a) the Effective Date or (b) entry of an order of the Bankruptcy Court approving the rejection.

Any proofs of claim arising from the rejection of any of the Town's executory contracts or unexpired leases that are not timely filed in accordance with this Section shall (1) be disallowed automatically, (2) be forever barred from assertion, (3) shall not be enforceable against the Town, (4) be deemed fully satisfied, released, and expunged, notwithstanding anything in the creditor list filed by the Town as required by Bankruptcy Code sections 924 and 925 or in any proof of claim to the contrary.

Allowed Claims arising from the rejection of the Town's executory contracts and unexpired leases shall be classified as Class 6 Claims or Convenience Class Claims, as applicable.

Any claim based upon the rejection of an unexpired lease of real property shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and subject to any state law mitigation requirements.  Nothing contained herein shall be deemed an admission by the Town that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Town of any objections to such Claim if asserted.

## VII.    IMPLEMENTATION AND MEANS FOR IMPLEMENTATION OF THIS PLAN

Following the Effective Date, the Town will continue to operate pursuant to the its governing charter, the Constitution of the State of California and other applicable laws.  Payments of unclassified Claims and payments to creditors in Classes other than Classes 4, 6 and 10 will be made by the Town from the General Fund.  Payments to Class 4 Claims will be made from the Employee Leave Fund.  Payments to Class 6 Claims will be made from the Trust created pursuant to the Plan and funded by the Trust Assets contributed by the Town.  Payments to class 10 Claims will be made from the applicable special assessments and special taxes collected by the Town to pay the Special Assessment and Special Tax Obligations as required by the terms of such obligations.

1   While the Town Council adopted the fiscal policies and projections in the Long-

2   Term Financial Forecast and Business Plan to govern the allocation of the Town's unrestricted

3   resources, the Town acknowledges and understands that financial plans and budgets are not

4   absolutely static, and that ongoing adjustments will have to be made during the course of the

5   years covered by the Long-Term Financial Forecast and Business Plan in order to enable the

6   Town to adjust to changing economic and operational needs. However, this Plan represents the

7   Town's commitment to the binding treatment of the holders of Claims in the various Classes as

8   enumerated in this Plan.

9   All of the Town's claims, causes of action, rights of recovery, rights of offset,

10  recoupment rights, rights to refunds and similar rights, including all such rights listed in Exhibit

11  F, shall be retained by the Town.  The failure to list in the Disclosure Statement any potential or

12  existing Right of Action retained by the Town is not intended to and shall not limit the rights of

13  the Town to pursue any such action.  Unless a Right of Action is expressly waived, relinquished,

14  released, compromised or settled in this Plan, the Town expressly reserves all Rights of Action

15  for later adjudication and, as a result, no preclusion doctrine, including the doctrines of res

16  judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or

17  otherwise) or laches, shall apply to such Rights of Action upon or after the confirmation or

18  consummation of this Plan or the Effective Date. Without limiting the foregoing, the Town

19  expressly reserves the right to pursue or adopt against any other entity any claims alleged in any

20  lawsuit in which the Town is a defendant or an interested party.

21  **VIII.   MAMMOTH LAKES PLAN OF ADJUSTMENT TRUST AND PLAN TRUSTEE**

22  **A.    Generally**

23  On the Effective Date, the Trust will be created and, except as otherwise provided

24  in the Plan, the Trust Assets shall be transferred to and vest in the Trust to be administered by the

25

26

Plan Trustee for the benefit of the beneficiaries of the Trust.  The beneficiaries of the Trust are the holders of Allowed Class 6 Claims against the Town.

**B.      Establishment Of The Trust**

On the Effective Date, the Town will execute the Trust Agreement and the Plan Trustee shall execute the Trust Agreement on behalf of the Trust and the Town will transfer the Initial Cash Contribution and the Contributed Real Estate to the Trust.  The Town will thereafter transfer the Annual Cash Contribution to the Trust unless and until the issuance of the Plan COP/Bond, the net proceeds of which will be transferred to the Trust.

**C.      Purpose Of The Trust**

The Trust shall exist after the Effective Date, with all the powers of a trust under applicable California law.  The Trust shall execute and consummate such assignments, purchase agreements, bills of sale, operating agreements, conveyance documents and all other transaction documents, contracts, agreements, and instruments as are necessary to implement and consummate the transactions required under or in connection with the Plan, on or after the Effective Date.

On and after the Effective Date, the Trust will own the Trust Assets and shall act as necessary to liquidate the Trust Assets and to enhance or preserve the value of the Trust Assets.

**D.      Appointment Of The Plan Trustee**

The Plan Trustee will be appointed by the Town, identified in the Plan Supplement and approved in the Confirmation Order.

The Plan Trustee will serve from and after the Effective Date until a successor is duly elected or appointed by the Town pursuant to the provisions of the Trust Agreement.

**E.     Powers Of The Plan Trustee**

The Plan Trustee shall receive title to the Trust Assets transferred by the Town to the Trust on the Effective Date and thereafter pursuant to the Plan.  Subject to the provisions of the Trust Agreement, the Plan Trustee shall have the power, duty and authority to perform the following acts, among others:

(a)     accept the Trust Assets transferred and provided to the Trust pursuant to the Trust Agreement and the Plan;

(b)     fund or arrange for the funding of the Plan and administration of the Trust as may be necessary to pay obligations to holders of Allowed Class 6 Claims under the Plan;

(c)     prepare, maintain and update the list of beneficiaries of the Trust and their respective interests and set Payment Dates in accordance with the terms of the Plan and the Trust Agreement;

(d)     file, settle, compromise, withdraw, or litigate to judgment any objections to Class 6 Claims;

(e)     create a Disputed Claims Reserve setting aside and holding funds representing the pro rata distribution from the Class 6 Claims Fund attributable to Disputed Class 6 Claims pending the allowance or disallowance of those Disputed Class 6 Claims;

(f)     as Claims are Allowed or disallowed, re-allocate assets in the Disputed Claims Reserve created pursuant to the Plan and prepare and file with the Bankruptcy Court a notice of any proposed adjustment to the balances of the Disputed Claims Reserves created in the Plan at least ten (10) days prior to any such adjustment;

(g)     file, settle, compromise, withdraw, or litigate to judgment any motions, applications, adversary proceedings, contested matters and other litigation matters relating to Class 6 Claims or the Trust Assets, whether filed or commenced by the Town after the Petition Date or by the Plan Trustee after the Effective Date;

(h)  prepare reports to be filed with the Bankruptcy Court, at least annually, describing in reasonable detail the litigation status of pending claims resolutions including whether any claims have been disallowed and the original asserted amount of such disallowed claims, and the amount of any claims that been allowed until all such allowance or disallowance proceedings have been resolved;

(i)  distribute the net proceeds of Trust Assets in the Class 6 Claims Fund to the beneficiaries of the Trust, as specified herein and as defined in the Trust Agreement, in accordance with the terms of the Trust Agreement;

(j)  perfect and secure his/her right, title and interest to any and all Trust Assets;

(k)  reduce all of the Trust Assets to his/her possession and conserve, protect, collect and liquidate or otherwise convert all Trust Assets;

(l)  deposit Trust funds and draw checks and make disbursements thereof;

(m)  pay and discharge from the Trust Assets any costs, expenses, fees or obligations deemed necessary to preserve the Trust Assets, and to protect the Trust and the Plan Trustee from liability;

(n)  employ such attorneys, accountants, engineers, agents, tax specialists, other professionals, and clerical assistance as the Plan Trustee may deem necessary. The Plan Trustee shall be entitled to rely upon the advice of retained professionals and shall not be liable for any action taken in reliance on such advice.  The fees and expenses of all such professionals shall be charges as expenses of the Trust and shall be paid upon approval of the Plan Trustee;

(o)  employ brokers, investment brokers, sales representatives or agents, or other persons necessary to manage the Trust Assets;

DOCUMENT PREPARED
ON RECYCLED PAPER

1          (p)      create an Expense Reserve setting aside from the Trust Assets funds

2    sufficient for the payment of the expenses and fees of the Trust, the Plan Trustee and those

3    persons or agencies described in (n) and (o) engaged by the Trust or Plan Trustee;

4          (q)      exercise any and all powers granted the Plan Trustee by any

5    agreements or by California common law or any statute that serves to increase the extent of the

6    powers granted to the Plan Trustee hereunder;

7          (r)      take any action required or permitted by the Plan or the Trust

8    Agreement;

9          (s)      execute obligations, whether negotiable or non-negotiable;

10          (t)      sue and be sued in the name of the Trust;

11          (u)      settle, compromise or adjust by arbitration, or otherwise, any

12    disputes or controversies in favor or against the Plan Trust;

13          (v)      waive or release rights of any kind;

14          (w)      appoint, remove and act through agents, managers and employees

15    and confer upon them such power an authority as may be necessary or advisable;

16          (x)      negotiate, renegotiate or enter into any contract or agreements

17    binding the Trust, and to execute, acknowledge and deliver any and all investments that are

18    necessary, required or deemed by the Plan Trustee to be advisable in connection with the

19    performance of his/her duties;

20          (y)      borrow such sums of money at any time and from time to time for

21    such periods of time upon such terms and conditions from such persons or corporations

22    (including any fiduciary hereunder) for such purposes as may be deemed advisable, and secure

23    such loans with any of the Trust Assets, so long as the terms of any such borrowing provide that

24    no recourse shall be had to the Plan Trustee, or the Town or any beneficiary of the Trust on any

25    such debt; and

26

DOCUMENT PREPARED ON RECYCLED PAPER

(z)    in general, without in any manner limiting any of the foregoing, deal with the Trust Assets or any part or parts thereof in all other ways as would be lawful for any person owing the same to deal therewith, whether similar to or different from the ways above specified, at any time or times hereafter.

**F.    Payment Of Expenses Incurred By The Trust**

The Plan Trustee, including any successor Plan Trustee, may commit the Trust to pay the Plan Trustee, from the Trust Assets, reasonable compensation for his/her services rendered and reimbursement of expenses incurred.  Professionals retained by the Trust shall be entitled to reasonable compensation for services rendered and reimbursement of expenses incurred.  The payment of the fees and expense of the professionals retained by the Trust shall be made in the ordinary course of business from the Trust Assets.

**G.    Exculpation And Indemnification Of The Plan Trustee**

The Plan Trustee shall not be liable for actions taken or omitted in his/her capacity as trustee of the Trust, except those acts arising out of fraud, willful misconduct, or gross negligence.  The Plan Trustee shall be entitled to indemnification and reimbursement for all losses, fees, and expenses in defending any and all of his/her actions or inactions in his/her capacity as Plan Trustee, except for any actions or inactions involving his/her own fraud, willful misconduct, or gross negligence.  Any indemnification claim of the Plan Trustee shall be satisfied from the assets of the Trust.

The Trust shall, to the fullest extent permitted by California law, indemnify and hold harmless the Plan Trustee and agents, representatives, attorneys, professionals and employees of the Trust (each an "Indemnified Party"), from and against any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to, attorney's fees and costs, arising out of or due to their actions or omissions with respect to the Trust or the implementation or administration of the Trust Agreement, if the Indemnified Party acted in good

DOCUMENT PREPARED ON RECYCLED PAPER

faith and in a manner reasonably believed to be in (or not opposed to) the best interests of the Trust, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his/her conduct was unlawful.

**H.      Retention Of Funds Prior To Distribution**

The Plan Trustee shall collect all Cash constituting Trust Assets and, pending distribution, shall deposit such Cash with a FDIC-insured financial institution that has banking services.  The Plan Trustee will deposit Cash so that it is adequately insured.  Notwithstanding the foregoing, the Plan Trustee may invest all Cash funds (including any earnings thereon or proceeds therefrom) in the same manner as chapter 7 trustees are required to invest funds pursuant to the guidelines of the United States Trustee's Office, provided that the Plan Trustee shall invest funds held in only demand and time deposits, such as short-term certificates of deposit, in banks or savings institutions, or other temporary, liquid and low-risk investments, such as Treasury bills. The Plan Trustee shall hold all such funds until they are distributed pursuant to the Plan.

The Plan Trustee will not be required to post a bond or be audited or monitored except as otherwise expressly provide in the Trust Agreement.  Forty-five (45) days after the end of each calendar year of the Trust and forty-five (45) days after termination of the Trust, the Plan Trustee will file with the Bankruptcy Court an unaudited written report and account showing (i) the assets and liabilities of the Trust at the end of such year or upon termination; (ii) any changes in the Trust Assets that have not been previously reported, and (iii) any material action taken by the Plan Trustee in the performance of his/her duties under the Trust Agreement that has not been previously reported.

**I.      Distributions To Trust Beneficiaries**

The Plan Trustee, within a reasonable period after receipt of Available Cash sufficient to make a Distribution, may distribute such Available Cash, to the beneficiaries of the

Trust, after deducting any costs and expenses associated with operation of the Trust, as provided by this Plan.

**J.        Representation Of Trust**

The professionals employed by the Trust are expressly authorized to simultaneously represent any party on any matter not directly adverse to the Trust.

**K.        Termination Of The Trust**

The Trust shall remain and continue in full force and effect until the earlier of: (a) ten (10) years from the Effective Date or (b) the date on which (1) all Trust Assets have been distributed or abandoned, (2) all costs, expenses, and obligations incurred in administering the Trust have been fully paid, and (3) all remaining income and proceeds of the Trust Assets have been distributed in accordance with the provisions of the Plan; provided, however, that if the complete liquidation of the Trust Assets and satisfaction of all remaining obligations, liabilities and expenses of the Trust pursuant to the Plan has not been completed prior to ten (10) years from the Effective Date, the Plan Trustee may, for good cause shown, seek the approval of the Bankruptcy Court for an extension of the termination date of the Trust for a specified period of time in order to complete the purpose of the Trust as set forth in the Plan and the Trust Agreement.

On the termination date of the Trust, the Plan Trustee will execute and deliver any and all documents and instruments reasonably requested to evidence such termination.  Upon termination and complete satisfaction of its duties under the Trust Agreement, the Plan Trustee will be forever discharged and released from all power, duties, responsibilities and liabilities pursuant to the Trust other than those attributable to fraud, gross negligence or willful misconduct of the Plan Trustee.

**L.    Resignation Of The Plan Trustee**

The Plan Trustee may resign at any time by giving written notice to the Town Council and such resignation shall be effective upon the date provided in such notice.  In the case of the resignation of the Plan Trustee, a successor Plan Trustee shall thereafter be appointed by the Town Council, whereupon such resigning Plan Trustee shall convey, transfer and set over to such successor Plan Trustee by appropriate instrument or instruments all of the Trust Assets then unconveyed or otherwise undisposed of and all other assets then in his/her possession pursuant to the Trust Agreement.  Without further act, deed or conveyance, a successor Plan Trustee shall be vested with all the rights, privileges, powers and duties of the Plan Trustee, except that the successor Plan Trustee shall not be liable for the acts or omissions of his/her predecessor(s).  Each succeeding Plan Trustee may in like manner resign and another may in like manner be appointed in his/her place.

**IX.    DISTRIBUTIONS**

**A.    Distribution Agents.**

On or after the Effective Date, the Town and the Plan Trustee may retain one or more agents to perform or assist them in performing the distributions to be made pursuant to this Plan, which agents may serve without bond. The Town and the Plan Trustee may provide reasonable compensation to any such agent(s) without further notice or Court approval.

**B.    Delivery of Distributions.**

All distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth in the books and records of the Town, the Trust or its agents, unless the Town or the Trust has been notified by such holder in a writing that contains an address for such holder different from the address reflected in its books and records. All such notifications of address changes and all address confirmations should be mailed to: Town of Mammoth Lakes, Attn: _____.  Or, if applicable to the Trust, Attn: Plan Trustee _____.  All

DOCUMENT PREPARED
ON RECYCLED PAPER

distributions with respect to Classes 1, 2 and 3 shall be made in accordance with the documents underlying the Union Bank COP Obligations and the Amended Citizens Bank COP Obligations Documents as appropriate.

### C.    Undeliverable Distributions.

#### 1.    Holding of Undeliverable Distributions.

If any distribution to a holder is returned to the Town, the Trust or their agents as undeliverable, no further distributions shall be made to such holder unless and until the Town or the Trust, as applicable, is notified in writing of such holder's then-current address. Unless and until the Town or the Trust is so notified, such distribution shall be deemed to be "Unclaimed Property" and shall be dealt with in accordance with Section IX.C.2.

#### 2.    Unclaimed Property.

If any entity entitled to receive distributions pursuant to this Plan has not appeared in the Chapter 9 Case prior to the Effective Date or on such other date on which such entity becomes eligible for distribution, and a distribution to that entity has been returned as described in Section IX.C.1, such distributions shall be deemed to be "Unclaimed Property." Unclaimed Property shall be set aside and held in a segregated account to be maintained by the Town or Trust, as applicable, pursuant to the terms of this Plan.

#### 3.    Notification and Forfeiture of Unclaimed Property.

No later than 60 days after any Payment Date, the Trust shall file with the Bankruptcy Court a list of Unclaimed Property arising from distributions by the Trust, together with a schedule that identifies the name and last-known address of holders of the Unclaimed Property; the Trust otherwise shall not be required to attempt to locate any such entity.  After the expiration of 60 days from the filing of the list, if the entity entitled to receive the distribution has not contacted the Trust to claim its distribution, the Unclaimed Property and accrued interest or

1   dividends earned thereon shall be remitted to and vest in the Trust for distribution to other

2   beneficiaries.

3           No later than 60 days after it makes any distribution contemplated by the Plan, the

4   Town shall file with the Bankruptcy Court a list of Unclaimed Property arising from distributions

5   by the Town in payment of a pre-Petition Date obligation pursuant to the Plan, together with a

6   schedule that identifies the name and last-known address of holders of the Unclaimed Property;

7   the Town otherwise shall not be required to attempt to locate any such entity.  After the expiration

8   of 60 days from the filing of that list, if the entity entitled to receive the distribution has not

9   contacted the Town to claim its distribution, the Unclaimed Property and accrued interest or

10   dividends earned thereon shall be remitted to and vest in the Town.

11        **D.**      **Distributions of Cash.**

12           Any payment of Cash to be made by the Town, the Trust or their respective agents

13   pursuant to this Plan shall be made by check drawn on a domestic bank or by wire transfer, at the

14   sole option of the Town or the Trust as applicable.

15        **E.**      **Timeliness of Payments.**

16           Any payments or distributions to be made pursuant to this Plan shall be deemed to

17   be timely made if made within seven (7) days after the dates specified in this Plan. Whenever any

18   distribution to be made under this Plan shall be due on a day that is a Saturday, Sunday, or legal

19   holiday, such distribution instead shall be made, without interest, on the immediately succeeding

20   day that is not a Saturday, Sunday, or legal holiday, but shall be deemed to have been timely

21   made on the date due.

22        **F.**      **Compliance With Tax, Withholding and Reporting Requirements.**

23           The Town and the Trust shall comply with all tax, withholding and reporting and

24   like requirements imposed on them by any government unit, including without limitation, any

25   payments related to CalPERS's required pension obligations.   In connection with each

26

distribution with respect to which the filing of an information return (such as Internal Revenue Service Forms W-2, 1099 or 1042) or withholding is required, the Town or the Trust, as applicable, shall file such information return with the Internal Revenue Service and provide any required statements in connection therewith to the recipients of such distribution, or effect any such withholding and deposit all moneys so withheld to the extent required by law.  With respect to any entity from whom a tax identification number, certified tax identification number, or other tax information is required by law to avoid withholding has not been received by the Town or the Trust, as applicable, the Town or the Trust, as applicable, at its sole option, may withhold the amount required and distribute the balance to such entity or decline to make such distribution until the information is received.

G.      **Time Bar to Cash Payments.**

Checks issued by the Town or the Trust on account of Allowed Claims shall be null and void if not negotiated within 90 days from and after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Town or the Trust, as applicable, by the holder of the Allowed Claim with respect to which such check originally was issued. Any claim in respect of such a voided check shall be made on or before the first anniversary of the issuance thereof.  After such date, all Claims in respect of voided checks shall be discharged and forever barred and the Town or the Trust, as applicable, shall retain all moneys related thereto.

H.      **No *De Minimis* Distributions.**

Notwithstanding any other provision of this Plan, no Cash payment of less than ten dollars ($10.00) shall be made by the Town or the Trust on account of any Allowed Claim.

I.      **No Distributions on Account of Disputed Claims.**

Notwithstanding anything to the contrary in this Plan, no distributions shall be made on account of any part of any Disputed Claim until such Claim becomes Allowed (and then

only to the extent so Allowed). Distributions made after the Effective Date in respect of Claims that were not Allowed as of the Effective Date (but which later became Allowed) shall be deemed to have been made as of the Effective Date.

### J. No Postpetition Accrual.

Except as otherwise specifically provided in this Plan or Allowed by order of the Bankruptcy Court, the Town and the Trust shall not be required to pay to any holder of a Claim any interest, penalty or late charge accruing with respect to such Claim on or after the Petition Date.

## X. DISPUTED CLAIMS; OBJECTIONS TO CLAIMS; PROSECUTION OF OBJECTIONS TO DISPUTED CLAIMS

### A. Claims Objection Deadline; Prosecution of Objections.

The Plan Trustee shall have the right to object, or prosecute any objection filed by the Town prior to the Effective Date, to the allowance of Class 6 Claims filed with the Bankruptcy Court with respect to which liability or allowance is disputed in whole or in part. After the Effective Date, the Town shall have the right to object to the allowance of all Claims, other than Class 6 Claims, filed with the Bankruptcy Court with respect to which liability or allowance is disputed in whole or in part.  Unless otherwise ordered by the Bankruptcy Court, the Town and the Plan Trustee, as applicable, shall file and serve any such objections to Claims by not later than 180 days after the Effective Date (or, in the case of Claims lawfully filed after the Effective Date, by not later than 180 days after the date of filing of such Claims).

### B. Reserves, Payments, and Distributions With Respect to Disputed Claims.

The Plan Trustee shall establish Disputed Claim Reserves for the purpose of effectuating distributions to holders of Disputed Class 6 Claims pending the final allowance or disallowance of such Claims in accordance with the Plan.  Except as otherwise provided in the Plan, the applicable Disputed Claim Reserve shall be withheld from the property to be distributed

under the Plan until the entry of a Final Order on the allowance or disallowance of such Disputed Claims.

When a Disputed Claim becomes an Allowed Claim, in whole or in part, the Plan Trustee or his/her agents shall distribute to the holder thereof the distributions, if any, to which such holder is then entitled under this Plan. Such distributions, if any, shall be made as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim becomes a Final Order (or such other date as the Claim becomes an Allowed Claim), but in no event more than 60 days thereafter. Unless otherwise specifically provided in this Plan or Allowed by order of the Bankruptcy Court, no interest shall be paid on Disputed Claims that later become Allowed Claims.

## XI.    EFFECT OF CONFIRMATION

### A.    Exculpation.

Neither the Town nor its Related Parties shall have or incur any liability to any Person for any act or omission occurring on or after the Petition Date in connection with, related to, or arising out of the Chapter 9 Case, the formulation, preparation, dissemination, implementation, confirmation, or approval of the Plan or any compromises or settlement contained therein, the Disclosure Statement, or any contract, instrument, release, or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan; provided, however, that the foregoing provisions shall not affect the liability of any Person that otherwise would result from any such act to the extent that such act is determined in a Final Order to have constituted willful misconduct or fraud. For purposes of the foregoing, it is expressly understood that any act or omission effected with the approval of the Bankruptcy Court will conclusively be deemed not to constitute willful misconduct or fraud unless the approval of the Bankruptcy Court was obtained by fraud or intentional misrepresentation, and in all respects, the Town and its Related Parties shall be entitled to rely on

the advice of their respective counsel with respect to their duties and responsibilities in connection with the Chapter 9 Case and the Plan.

**B.**     **Binding Effect.**

Upon the Effective Date and pursuant to Bankruptcy Code section 944(a), the Plan and the distributions and treatments provided in the Plan shall be binding upon the Town, all holders of Claims, parties in interest, and other Persons.  Confirmation of the Plan binds each holder of a Claim to all the terms and conditions of the Plan, whether or not such holder is in an impaired class under the Plan and whether or not such holder has accepted the Plan.

**C.**     **Discharge of the Town.**

The rights afforded in this Plan and the treatment of all Claims by the Plan, be they Impaired or Unimpaired under this Plan, shall be in exchange for and in complete satisfaction, discharge and release of all Claims of any nature whatsoever arising on or before the Effective Date, known or unknown, including any interest accrued or expenses incurred thereon from and after the Petition Date, whether against the Town or any of its properties, assets or interests in property. Except as otherwise provided herein, upon the Effective Date, all Claims against the Town that arose prior to the Effective Date shall be, and shall be deemed to be, satisfied, discharged and released in full, be they Impaired or Unimpaired under this Plan.

Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, (a) the Town and its property are discharged and released from all Claims and rights that arose before the Effective Date, including all debts, obligations, demands, and liabilities, and all debts of the kind specified in Bankruptcy Code section 502(g), 502(h), or 502(i), regardless whether (i) a proof of Claim based on such debt is filed or deemed filed, (ii) a Claim based on such debt is allowed pursuant to Bankruptcy Code section 502, or (iii) the holder of a Claim based on such debt has or has not accepted the Plan; (b) any judgment underlying a Claim discharged hereunder is void; and (c) all Persons are precluded from asserting against the

Town or its property any Claims or rights based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

### D.    Injunction.

Except as otherwise expressly provided in this Plan, all entities who have held, hold or may hold a Claim that is based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, that otherwise arose or accrued prior to the Effective Date, or that otherwise is discharged pursuant to the Plan shall be permanently enjoined from and after the Effective Date, from: (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim against the Town or its property; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree or order against the Town or its property with respect to such Claim; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against the Town or its property; (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due to the Town with respect to any such Claim, except as otherwise permitted by section 553 of the Bankruptcy Code; and (e) commencing or continuing any action, any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan, the Confirmation Order, or the discharge provisions of Bankruptcy Code section 944.  Any Person injured by any willful violation of this injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages, from the willful violator.

### E.    Term of Existing Injunctions or Stays.

Unless otherwise provided in the Plan all injunctions or stays provided for in the Chapter 9 Case pursuant to sections 105, 362, or 922 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

## XII.    RETENTION OF AND CONSENT TO JURISDICTION

Following the Effective Date, the Bankruptcy Court shall retain and have exclusive jurisdiction over any matter arising in or related to the Chapter 9 Case or this Plan, and otherwise for the following:

1.    to resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the Town is a party or with respect to which the Town may be liable (including but not limited to, resolving any objections filed pursuant to the Assumption and Cure Objection Procedure), and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

2.    to enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan, and all other contracts, instruments, releases, and other agreements or documents related to this Plan;

3.    to determine any and all motions, adversary proceedings, applications and contested or litigated matters that may be pending on the Effective Date or that, pursuant to this Plan, may be instituted by the Town after the Effective Date or that are instituted by any holder of a Claim before or after the Effective Date concerning any matter based upon, arising out of, or relating to the Chapter 9 Case, whether or not such action initially is filed in the Bankruptcy Court or any other court;

4.    to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

5.    to hear and determine any objections to Claims or to proofs of Claim, whether filed before or after the Effective Date, including any objections to the classification of any Claim, and to allow, disallow, determine, liquidate, classify, estimate or establish the priority of or secured or unsecured status of any Claim, in whole or in part;

6.    to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed or vacated;

7.      to issue such orders in aid of execution of this Plan, to the extent authorized by section 1142(b) of the Bankruptcy Code;

8.      to consider any modifications of this Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

9.      to hear and determine the reasonableness of Professional Claims;

10.     to hear and determine all disputes or controversies arising in connection with or relating to this Plan or the Confirmation Order or the interpretation, implementation, or enforcement of this Plan or the Confirmation Order or the extent of any entity's obligations incurred in connection with or released under this Plan or the Confirmation Order;

11.     to issue and enforce injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of this Plan;

12.     to determine any other matters that may arise in connection with or are related to this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document related to this Plan or the Disclosure Statement;

13.     to hear any other matter or for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code; and

14.     to enter a final decree closing the Chapter 9 Case.

If the Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter, then this Section shall have no effect upon and shall not control, limit or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**XIII.    CONDITIONS PRECEDENT**

      A.    **Conditions Precedent to Effective Date.**

           The "effective date of the plan," as used in section 1129 of the Bankruptcy Code, shall not occur, and this Plan shall be of no force and effect, until the Effective Date. The occurrence of the Effective Date is subject to the satisfaction (or waiver as set forth in Section XIII(C)) of the following conditions precedent:

           **1.**    **Confirmation Order.** The Confirmation Order shall have been entered and shall not be subject to a stay.

           **2.**    **Plan Documents.** All agreements and instruments contemplated by, or to be entered into pursuant to, this Plan shall be in form and substance acceptable to the Town, shall have been duly and validly executed and delivered, or deemed executed by the parties thereto, and all conditions to their effectiveness shall have been satisfied or waived.

           **3.**    **Timing.** The Effective Date shall occur on the first day after which the conditions set forth in Section XIII.A.1 and XIII.A.2 are satisfied or waived; *provided* that, unless otherwise ordered by the Bankruptcy Court, the Effective Date must occur by no later than six months after the Confirmation Date.

      B.    **Waiver of Conditions to Effective Date.**

           The Town may waive in whole or in part any condition to effectiveness of this Plan other than the requirement that the Confirmation Order have been entered and not be subject to a stay. Any such waiver of a condition may be effected at any time, without notice or leave or order of the Bankruptcy Court and without any formal action, other than the filing of a notice of such waiver with the Bankruptcy Court.

      C.    **Effect of Failure of Conditions.**

           In the event that the conditions to effectiveness of this Plan have not been timely satisfied or waived, and upon notification submitted by the Town to the Bankruptcy Court (a) the

Confirmation Order shall be vacated, (b) no distributions under this Plan shall be made, (c) the Town and all holders of Claims shall be restored to the *status quo* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (d) all of the Town's obligations with respect to the Claims shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Town or any other entity, to prejudice in any manner the rights of the Town or any entity in any further proceedings involving the Town, to constitute an admission of any kind by the Town or any entity.

## XIV.   **MISCELLANEOUS PROVISIONS**

### A.      **Severability.**

If, prior to the Confirmation Date, any term or provisions of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, with the consent of the Town, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### B.      **Governing Law.**

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent that an Exhibit hereto or document implementing the Plan provides otherwise, the rights, duties and obligations arising under this Plan shall be governed by, and construed and

enforced in accordance with, the laws of the State of California, without giving effect to principles of conflicts of laws.

### C.    **Effectuating Documents and Further Transactions.**

Each of the officials and employees of the Town is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and provisions of this Plan.

### D.    **Plan Supplement**

Any exhibits or schedules to be filed as part of the Plan not initially filed with the Plan shall be subsequently filed in a Plan Supplement(s) prior to the Confirmation Hearing. Holders of Claims may obtain a copy of the Plan Supplements upon written request to counsel for the Town or may view Plan Supplements online at the website of the Town, *www.ci.mammoth-lakes.ca.us/*. The Town may amend the Plan Supplement, and any attachments thereto, through and including the Confirmation Date.

### E.    **Modification of the Plan**

Subject to the restrictions set forth in Bankruptcy Code section 942, the Town reserves the right to alter, amend, or modify the Plan at any time before the Confirmation Date.

### F.    **Notices**

Any notices, requests, and demands required or permitted under the Plan, in order to be effective, shall be in writing (including, without express or implied limitation, by facsimile transmission), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Town:

1

Town of Mammoth Lakes
Attn: David Wilbrecht

2

Town Manager
PO Box 1609

3

Mammoth Lakes, CA 93546
Fax: 760-934-8608

4

5

With a copy to:

6

Zack A. Clement
Fulbright & Jaworski LLP

7

1301 McKinney, Suite 5100
Houston, TX 77010-3095

8

Fax: 713-651-5246

9

**G.**    **Notice of Effective Date.**

10

On or before ten (10) days after occurrence of the Effective Date, the Town or its

11

agent shall mail or cause to be mailed to all holders of Claims a notice that informs such holders

12

of: (a) entry of the Confirmation Order; (b) the occurrence of the Effective Date; (c) the deadline

13

established under this Plan for the filing of Administrative Claims and Cure Objections; (d) the

14

procedures for changing an address of record pursuant to Section IX; and (e) such other matters

15

as the Town deems to be appropriate.

16

17

DATED: July 3, 2012                                 TOWN OF MAMMOTH LAKES,
                                                    CALIFORNIA

18

19

20

By: _____
                                                        David Wilbrecht
                                                        Town Manager

21

22

23

24

25

26

Submitted By:

**FULBRIGHT & JAWORSKI LLP**
Zack A. Clement *(pro hac vice* pending)
William R. Greendyke *(pro hac vice* pending)
R. Andrew Black *(pro hac vice* pending)

-and-

**KLEE, TUCHIN, BOGDANOFF & STERN LLP**
Kenneth N. Klee (SBN 63372)
Michael L. Tuchin (SBN 150375)

Attorneys for Debtor
Town of Mammoth Lakes, California

Document Prepared
on Recycled Paper

## XV. EXHIBITS TO PLAN FOR THE ADJUSTMENT OF DEBTS OF TOWN OF MAMMOTH LAKES, CALIFORNIA
(to be provided in the Plan Supplement)

EXHIBIT A -     Contracts to be Assumed as Modified Pursuant to the Plan

EXHIBIT B -     Schedule of Annual Cash Contributions

EXHIBIT C -     Schedule of Amended Citizens Bank (Police Facility) COP Obligation Payments

EXHIBIT D -     Schedule of Amended Citizens Bank (Mammoth Lakes Housing Corporation Land Acquisition Project) Obligation Payments

EXHIBIT E -     Mammoth Lakes Plan of Adjustment Trust Agreement

EXHIBIT F -     Retained Rights of Action